GARDNER v DEPARTMENT OF TREASURY

NGO v DEPARTMENT OF TREASURY

MASELLI v DEPARTMENT OF TREASURY

Docket Nos. 315531, 315684, and 317171. Submitted June 4, 2014, at Lansing. Decided September 9, 2014, at 9:00 a.m. Leave to appeal sought.

After selling their homes, James and Susan Gardner, Liem and Alecia Ngo, and John and Jennifer Maselli sought refunds from the Department of Treasury of the transfer tax they had paid on the sales. The department denied the refund requests. Petitioners appealed in the Tax Tribunal, which reversed the department's decision in all three cases, holding that petitioners were entitled to refunds. The department appealed, and the appeals were consolidated by the Court of Appeals.

The Court of Appeals *held*:

Under MCL 207.523(1), the State Real Estate Transfer Tax Act (SRETTA) generally imposes a tax on written instruments when the instrument is recorded. However, a written instrument is exempt from the tax, under MCL 207.526(u), when (1) a principal residence exemption was claimed regarding the property under MCL 211.7cc, and (2) at the time the property was conveyed, the state equalized value (SEV) was less than or equal to the SEV on the date the property was acquired. But MCL 207.526(u) also contains a penalty clause, which states that after an exemption is claimed under Subsection (u), if the sale or transfer of property is found by the Treasurer to have been at a value other than true cash value, then a penalty equal to 20% of the tax shall be assessed in addition to the tax due under the act to the seller or transferor. The penalty clause requires a comparison of "value" to "true cash value." SRETTA, in MCL 207.522(g), defines the word "value" as the current or fair market worth in terms of legal monetary exchange at the time of transfer. Accordingly, when considering whether petitioners were entitled to a refund of the transfer taxes they paid, the Treasurer was required to consider how much petitioners were paid for their properties. The statute then required the Treasurer to compare that value to the true cash value

of each property. Although SRETTA does not define the term "true cash value," the General Property Tax Act (GPTA), in MCL 211.27(1), defines it as the usual selling price at the place where the property is at the time of assessment, being the price that could be obtained for the property at a private sale. SRETTA and the GPTA must be read *in pari materia* because they relate to the same subject and share a common purpose—taxation. Under the GPTA, the SEV represents 50% of the true cash value of a property for taxation purposes. MCL 207.526(u) plainly states that if the property was conveyed for a value different than its true cash value, the conveyance was not exempt from the transfer tax and the penalty clause applies. The Gardners sold their property for $875,000, although its true cash value was $749,600 (the SEV of $374,800 multiplied by two). The Ngos sold their property for $464,000, although its true cash value was $439,720 (the SEV of $219,860 multiplied by two). The Masellis sold their property for $470,000, although its true cash value was $397,060 (the SEV of $198,530 multiplied by two). Because none of the petitioners sold their property for its true cash value, the petitioners were not entitled to the exemption, and the Tax Tribunal erred when it ordered that the transfer taxes paid by petitioners be refunded.

Reversed.

OWENS, J., dissenting, would have affirmed the judgment of the Tax Tribunal. The purpose of the exemption is to provide relief for a homeowner in a declining market when the property's SEV has decreased from the time of purchase to the time of sale. The majority's interpretation of the penalty clause renders the statute effectively nugatory because a property will almost never sell for exactly twice the SEV. The term "true cash value" is synonymous with fair market value and refers to the probable price that a willing buyer and a willing seller would arrive at through arm's-length negotiation. In this case, petitioners were entitled to the exemption because the properties were the principal residences of the sellers, the properties had SEVs at the time of conveyance that were less than or equal to the SEVs those properties had at the time they were acquired, and the properties were sold at prices resulting from arm's-length negotiations.

TAXATION — PROPERTY — TRANSFER TAXES — EXEMPTION — TRUE CASH VALUE.

Under MCL 207.526(u), a written instrument is exempt from the transfer tax imposed under the State Real Estate Transfer Tax Act when (1) a principal residence exemption was claimed regarding the property under MCL 211.7cc, (2) at the time the property was conveyed, the state equalized value (SEV) was less than or equal to

the SEV on the date the property was acquired, and (3) the property was conveyed for its true cash value; the SEV represents 50% of the true cash value of a property for taxation purposes; if the sale or transfer of property is found by the Treasurer to have been at a value other than true cash value, then a penalty equal to 20% of the tax shall be assessed in addition to the tax due under the act to the seller or transferor.

*1-800-LAW-FIRM, PLLC* (by *Joshua T. Shillair*), for James and Susan Gardner, Liem and Alecia Ngo, and John and Jennifer Maselli.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, *B. Eric Restuccia*, Deputy Solicitor General, and *Matthew B. Hodges*, Assistant Attorney General, for the Department of Treasury.

Before: CAVANAGH, P.J., and OWENS and STEPHENS, JJ.

CAVANAGH, P.J. In these consolidated appeals, the Department of Treasury (respondent) appeals as of right judgments of the Michigan Tax Tribunal (Tax Tribunal) awarding refunds of the transfer tax that each petitioner paid pursuant to the State Real Estate Transfer Tax Act (SRETTA) when they sold their homes, on the ground that the conveyances were exempt under MCL 207.526(u). We reverse.

The facts are not disputed. All of the petitioners were entitled to the principal residence exemption under MCL 211.7cc. And at the time each petitioner sold their home, the state equalized value (SEV) was less than the SEV at the time of their purchase. In particular, petitioners James and Susan Gardner purchased their home in 2008 when the SEV was $464,300, but sold it for $875,000 when the SEV was $374,800. Petitioners Liem and Alecia Ngo purchased their home in 2007 when the SEV was $321,180, but sold it for $464,000

when the SEV was $219,860. Petitioners John and Jennifer Maselli purchased their home in 2004 when the SEV was $303,370, but sold it for $470,000 when the SEV was $198,530.

Upon the sale of their homes, each petitioner paid the transfer tax under SRETTA, MCL 207.523, and then requested a refund from respondent under MCL 207.526(u), which provides that certain written instruments and transfers of property are exempt from the transfer tax, including:

> A written instrument conveying an interest in property for which an exemption is claimed under section 7cc of the general property tax act, 1893 PA 206, MCL 211.7cc, if the state equalized valuation of that property is equal to or lesser than the state equalized valuation on the date of purchase or on the date of acquisition by the seller or transferor for that same interest in property. If after an exemption is claimed under this subsection, the sale or transfer of property is found by the treasurer to be at a value other than the true cash value, then a penalty equal to 20% of the tax shall be assessed in addition to the tax due under this act to the seller or transferor. [MCL 207.526(u).]

Respondent denied each petitioner's request for a refund of the transfer tax, concluding that they were not entitled to the exemption because each property sold for more than its "true cash value." Respondent interpreted the penalty clause phrase "true cash value" as meaning two times the SEV, consistent with the annual property tax assessment process. Thereafter, each petitioner appealed in the Tax Tribunal.

In each appeal, the Tax Tribunal held that the first sentence of MCL 207.526(u) is unambiguous and sets forth two elements that must be met to qualify for the transfer tax exemption: (1) a principal residence exemption was claimed regarding the subject property under MCL 211.7cc, and (2) at the time the subject property

was conveyed, the SEV was less than or equal to the SEV on the date the property was acquired. However, the Tax Tribunal opined, when the first sentence of the statute is read in conjunction with the second sentence—the penalty clause—the statute becomes ambiguous because the penalty clause would only allow an exemption when the value or sale price of the property is the same as its true cash value, which constituted an absurdity that was unintended by the Legislature. In reaching this conclusion, the Tax Tribunal rejected respondent's argument that true cash value means two times the SEV, noting that MCL 211.27(1) defines "true cash value" as "the usual selling price" and "the price that could be obtained for the property at private sale . . . ." Further, the Tax Tribunal held that respondent failed to carry its burden of proving that the penalty provision applied and, therefore, each petitioner was entitled to a refund of the transfer tax. Respondent appealed in each case, and the appeals were consolidated. *Gardner v Dep't of Treasury,* unpublished order of the Court of Appeals, entered December 10, 2013 (Docket Nos. 315531, 315684, and 317171).

Respondent argues that the Tax Tribunal erred when it determined that each conveyance was exempt from transfer tax because, according to respondent, petitioners sold their properties for more than the true cash value of each property. We agree.

When the facts are not in dispute and there is no claim of fraud, decisions of the Tax Tribunal are reviewed to determine whether the tribunal made an error of law or adopted a wrong legal principle. *Mich Props, LLC v Meridian Twp,* 491 Mich 518, 527-528; 817 NW2d 548 (2012). We review de novo issues of statutory interpretation. *McAuley v Gen Motors Corp,* 457 Mich 513, 518; 578 NW2d 282 (1998).

Generally, SRETTA imposes a tax upon written instruments when the instrument is recorded. MCL 207.523(1). However, MCL 207.526 sets forth several exemptions and provides, in relevant part:

> The following written instruments and transfers of property are exempt from the tax imposed by this act:
>
> *  *  *
>
> (u) A written instrument conveying an interest in property for which an exemption is claimed under section 7cc of the general property tax act, 1893 PA 206, MCL 211.7cc, if the state equalized valuation of that property is equal to or lesser than the state equalized valuation on the date of purchase or on the date of acquisition by the seller or transferor for that same interest in property. If after an exemption is claimed under this subsection, the sale or transfer of property is found by the treasurer to be at a value other than the true cash value, then a penalty equal to 20% of the tax shall be assessed in addition to the tax due under this act to the seller or transferor.

The foremost rule of statutory interpretation "is to discern and give effect to the intent of the Legislature." *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). Each word or phrase of a statute is given its commonly accepted meaning, unless a word or phrase is expressly defined, and then courts must apply it in accordance with that definition. *McAuley*, 457 Mich at 518. Unambiguous language is given the intent clearly expressed and the statute is enforced as written. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). Judicial construction of unambiguous language is not permitted. *Id*. Interpretation strives to give effect to every phrase, clause, and word in a statute. *Id*. at 237. "To discern the true intent of the Legislature, the statutes must be read together, and no

one section should be taken in isolation." *Apsey v Mem Hosp*, 477 Mich 120, 132 n 8; 730 NW2d 695 (2007).

The parties agree with the Tax Tribunal that the first sentence of MCL 207.526(u) imposes two requirements for the exemption to apply: (1) a principal residence exemption was claimed regarding the subject property under MCL 211.7cc, and (2) at the time the subject property was conveyed, the SEV was less than or equal to the SEV on the date the property was acquired. The dispute regards the statute's second sentence, the penalty clause.

Respondent argues that the Tax Tribunal failed to accord the proper and distinct meanings to the word "value" and the phrase "true cash value" used in the penalty clause. The word "value" is defined in SRETTA as "the current or fair market worth in terms of legal monetary exchange at the time of the transfer." MCL 207.522(g). However, respondent argues, "[T]rue cash value as used in MCL 207.526(u) means the true cash value assigned by the assessor in that year. And, because property is assessed at 50% of the true cash value, subject to county equalization, true cash value will always be two times the state equalized value." Respondent further argues that the statute's use of the phrase "other than" means "greater than" with respect to the true cash value because that construction allows for a transfer tax exemption in a declining market.

To the contrary, petitioners argue, the General Property Tax Act (GPTA) defines "true cash value" as the usual selling price or price that could be expected at a private sale of the property. MCL 211.27(1). And "true cash value," according to petitioners, is synonymous with "fair market value." See *CAF Investment Co v State Tax Comm*, 392 Mich 442, 450; 221 NW2d 588 (1974). Further, SRETTA and the GPTA must be read

*in pari materia* because they both relate to the same subject, taxation, and SRETTA specifically refers to the GPTA and its terms. Accordingly, petitioners argue, to establish that the penalty clause was applicable here, respondent was required to prove that petitioners' properties were sold for a value other than fair market value, i.e., the price that a willing buyer and a willing seller would arrive at through arm's-length negotiation. Because respondent failed to provide any such evidence, the Tax Tribunal properly found that the penalty clause did not apply and petitioners were entitled to a refund of the transfer tax they paid.

There is some merit to both parties' arguments on appeal. We agree with respondent that the Tax Tribunal erred as a matter of law by concluding that MCL 207.526(u) is ambiguous when its two sentences are considered together. Although the Tax Tribunal's interpretation of a state statute is entitled to respectful consideration, the tribunal's interpretation is not controlling and cannot overcome a statute's plain meaning. See *In re Rovas Complaint*, 482 Mich 90, 117-118; 754 NW2d 259 (2008). The statute at issue here is not ambiguous; the word "value" and the phrase "true cash value" have clear meanings.

SRETTA defines the word "value"; thus, that definition controls. See *McAuley*, 457 Mich at 518. Specifically, MCL 207.522(g) defines "value" as "the current or fair market worth in terms of legal monetary exchange at the time of the transfer. The tax shall be based on the value of the real property transferred . . . ." See also MCL 207.525. A well-established rule of statutory construction is that statutory language must be read within its particular context. *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003). The statutory provision at issue here requires a

comparison of "value" to "true cash value" for purposes of property taxation. Thus, "value" refers to the worth, in monetary terms, of what was exchanged for the real property in which the exemption was claimed. This definition is consistent with the definition provided by *Black's Law Dictionary* (7th ed), which defines "value" as "[t]he monetary worth or price of something; the amount of goods, services, or money that something will command in an exchange." And, similarly, as this Court noted in *Wolfe-Haddad Estate v Oakland Co*, 272 Mich App 323, 326; 725 NW2d 80 (2006), the definition of "value" in *Random House Webster's College Dictionary* (1997) is: " 'monetary or material worth, as in commerce," and "the worth of something in terms of some medium of exchange . . . .' " Accordingly, in these cases, when considering whether petitioners were entitled to a refund of the transfer taxes they paid, the Treasurer was required to consider how much petitioners were paid for their properties.

The statute then requires the Treasurer to compare that "value" to the "true cash value" of the subject property. Although SRETTA does not define "true cash value," the GPTA specifically defines "true cash value" for purposes of taxation as "the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale . . . or at forced sale." MCL 211.27(1). In accordance with well-established principles of statutory construction, statutory provisions of SRETTA and the GPTA are *in pari materia* because they relate to the same subject and share a common purpose—taxation. See *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998), quoting *Detroit v Mich Bell Tel Co*, 374 Mich 543, 558; 132 NW2d 660 (1965), overruled on other grounds by *City of Taylor v*

*Detroit Edison Co*, 475 Mich 109, 119 (2006). Thus, we consider the definition of "true cash value" set forth in GPTA applicable for purposes of SRETTA.

Essentially, then, MCL 207.526(u) requires consideration of how much claimants of the transfer tax exemption were paid for their properties compared to how much their properties were worth for taxation purposes. In Michigan, the true cash value, or worth, of a property is used to assess property taxes. That is, property must be assessed at 50% of its "true cash value." MCL 211.27a(1), citing Const 1963, art 9, § 3. The manner in which the assessment occurs is prescribed by law. See, for example, MCL 211.27. Generally, after the local tax assessor assesses each property at 50% of its true cash value, the assessment rolls are then subjected to an equalization process at both the county level, MCL 211.34(2), and state level, MCL 209.4(1), to ensure that taxing units "have equally and uniformly assessed property at fifty percent of its true cash value." *Fairplains Twp v Montcalm Co Bd of Comm'rs*, 214 Mich App 365, 369; 542 NW2d 897 (1995), citing *Emmet Co v State Tax Comm*, 397 Mich 550, 560; 244 NW2d 909 (1976) (WILLIAMS, J., dissenting). See also *WPW Acquisition Co v City of Troy*, 250 Mich App 287, 300-301; 646 NW2d 487 (2002). Thus, as respondent argued, the SEV represents 50% of the true cash value of a property for taxation purposes.[1]

And, pursuant to MCL 211.31, upon completion and endorsement of the assessment roll, "the same shall be conclusively presumed by all courts and tribunals to be valid, and shall not be set aside except for causes

---

[1] MCL 205.737(2) also directs the Tax Tribunal that, when determining SEV in an assessment dispute: "The property's state equalized valuation shall not exceed 50% of the true cash value of the property on the assessment date."

hereinafter mentioned." See also MCL 205.735(2) ("For an assessment dispute as to the valuation of property or if an exemption is claimed, the assessment must be protested before the board of review before the tribunal acquires jurisdiction of the dispute . . . ."). In this case, none of the petitioners protested their assessments or filed an assessment appeal; therefore, petitioners' assessments are conclusively presumed to be valid with regard to their properties. See *Alhi Dev Co v Orion Twp*, 110 Mich App 764, 767-768; 314 NW2d 479 (1981) ("[T]he conclusive presumption of validity as to an individual assessment arises only after an appeal is decided or the time for appeal has expired with respect to such parcel."). Accordingly, to determine whether each petitioner was entitled to the transfer tax exemption, the Treasurer had to compare how much was paid for each property to the value of the SEV multiplied by two, the property's undisputed true cash value.

However, when considering whether a claim for exemption has merit, the Treasurer must also determine whether the sale or transfer of property was "at a value *other than* the true cash value . . . ." MCL 207.526(u) (emphasis added). Respondent argues that the phrase "other than" should be construed to mean "greater than," consistent with an opinion by the Attorney General, which concluded that an exemption may be claimed provided that the property is sold for "not more than" its true cash value. OAG, 2007-2008, No. 7214, p 125 (April 3, 2008). That is, according to the Attorney General, this penalty clause applies only if the sale price was in excess of the true cash value of the property. *Id.* at p 128. However, opinions of the Attorney General are not binding on Michigan courts. *Frey v Dep't of Mgt & Budget*, 429 Mich 315, 338; 414 NW2d 873 (1987). And we disagree with the constructions of the phrase "other than" offered by respondent and the Attorney General.

Simply stated, "other than" does not mean "greater than"; rather, it plainly means "different." See MCL 8.3a. Thus, if the property was conveyed for a value different than its true cash value, the conveyance is not exempt from the transfer tax and the penalty clause applies. Tax exemption statutes "are to be strictly construed in favor of the taxing unit." *Ladies Literary Club v Grand Rapids*, 409 Mich 748, 753; 298 NW2d 422 (1980) (citation and quotation marks omitted). Accordingly, if the subject property was conveyed for a value less than or greater than its true cash value, the conveyance is not exempt from the transfer tax and the penalty clause applies if a claim for exemption or a claim for a refund of the transfer tax is made. By way of explanation, we offer the following examples: (A) if the true cash value of the subject property is $100,000 and it was sold for $50,000, the conveyance is not exempt from the transfer tax; (B) if the true cash value of the subject property is $100,000 and it was sold for $150,000, the conveyance is not exempt from the transfer tax. In the first hypothetical, the seller sold the property for less than its fair market value; a reasonably prudent seller would not typically sell below fair market value[2] and may have structured the sale to avoid paying the transfer tax or may not have consummated the sale through an arm's-length transaction. In any case, the conveyance is not exempt from the transfer tax. The second hypothetical is clear; the seller sold the property for more than its true cash value and the conveyance is not exempt from the transfer tax.

---

[2] The concepts of "true cash value" and "fair market value" are synonymous for purposes of ad valorem taxation of property. *CAF Investment Co*, 392 Mich at 450. Further, as this Court noted in *Mackey v Dep't of Human Servs*, 289 Mich App 688, 699; 808 NW2d 484 (2010), *Black's Law Dictionary* (7th ed) defines "fair market value" as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction . . . ."

This strict construction in favor of the taxing unit may seem harsh but, as noted by our Supreme Court, tax exemptions represent the "antithesis of tax equality" because they result in "the unequal removal of the burden generally placed on all landowners to share in the support of local government." *Mich Baptist Homes & Dev Co v Ann Arbor*, 396 Mich 660, 669-670; 242 NW2d 749 (1976). This interpretation is also consistent with the principles set forth by our Supreme Court in *Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948), regarding the construction of tax exemptions:

> "[I]t is a well-settled principle that, when a specific privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. . . . Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant." [Quoting 2 Cooley, Taxation (4th ed), § 672, p 1403.]

In this case, if petitioners sold their properties for more than or less than the true cash value of their properties, i.e., the value of the SEV doubled, the transfer tax was properly paid and they were not entitled to a refund. Again, the burden of proving entitlement to an exemption is on the party claiming the right to the exemption, *Elias Bros Restaurants, Inc v Treasury Dep't*, 452 Mich 144, 150; 549 NW2d 837

(1996), and that party must prove entitlement by a preponderance of the evidence, *ProMed Healthcare v Kalamazoo*, 249 Mich App 490, 494-495; 644 NW2d 47 (2002). Petitioners Gardner sold their property for $875,000, although its true cash value was $749,600 (the SEV of $374,800 multiplied by two). Therefore, petitioners Gardner were not entitled to a refund of the transfer tax they paid and the Tax Tribunal's decision is reversed. Petitioners Ngo sold their property for $464,000, although its true cash value was $439,720 (the SEV of $219,860 multiplied by two). Therefore, petitioners Ngo were not entitled to a refund of the transfer tax they paid and the Tax Tribunal's decision is reversed. Petitioners Maselli sold their property for $470,000, although its true cash value was $397,060 (the SEV of $198,530 multiplied by two). Therefore, petitioners Maselli were not entitled to a refund of the transfer tax they paid and the Tax Tribunal's decision is reversed. Accordingly, we reverse the decisions of the Tax Tribunal in each case. Petitioners were not entitled to a refund of the transfer tax paid with regard to each conveyance.

Reversed.

STEPHENS, J., concurred with CAVANAGH, P.J.

OWENS, J. (*dissenting*). I respectfully dissent from the majority opinion and, for the reasons set forth in this opinion, would affirm the judgments of the Tax Tribunal.

MCL 207.526(u) provides a seller or transferor an exemption from the state real estate transfer tax if (1) the seller or transferor claimed a principal residence exemption for the subject property under MCL 211.7cc, and (2) the state equalized value (SEV) at the time the

property was conveyed was equal to or lesser than the SEV on the date the property was acquired. The purpose of this exemption is to provide relief for homeowners in a declining market when the property's SEV decreased from the time of purchase to the time of sale.

The second sentence of subsection (u), which is in dispute, states:

> If after an exemption is claimed under this subsection, the sale or transfer of property is found by the treasurer to be at a value other than the true cash value, then a penalty equal to 20% of the tax shall be assessed in addition to the tax due under this act to the seller or transferor.

The majority's interpretation of this clause, known as the "penalty clause," renders the statute effectively nugatory. From the plain language of the statute, it is clear that the Legislature intended for a penalty to be assessed when a seller or transferor claimed the exemption and the sale was "at a value other than the true cash value . . . ." In other words, the Legislature did not intend for the exemption to apply to situations in which a seller or transferor sold their house at a value other than the true cash value.

The majority defines "true cash value" to mean the SEV of the property multiplied by two. According to the majority, the exemption would only apply if a property sold for exactly twice the SEV. The problem with employing this definition is that the exemption would become virtually nonexistent because a property will almost never sell for exactly twice its SEV. Although an assessor does his or her best, twice the SEV can only ever be an estimate of the true cash value, and that is why, unless the assessor is particularly lucky, sales are almost never exactly twice the SEV. This cannot be what the Legislature intended when it enacted an

exemption designed to protect homeowners in a declining market.

Rather, it is an arm's-length sale that, by definition, gives us the true cash value. "True cash value is synonymous with fair market value, and refers to the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation." *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013) (citations and quotation marks omitted). By this definition, then, the exemption would not apply only when a seller or transferor sold the property at a value other than the price that a willing buyer and a willing seller would arrive at through arm's-length negotiation. *Id.* Therefore, to claim the transfer-tax exemption, the property must be the principal residence of the seller or transferor, must have an SEV at the time of conveyance that is lesser than or equal to the SEV at the time it was acquired, and must be sold or transferred at a price resulting from an arm's-length sale. Employing this definition best effectuates the legislative intent, which is the foremost rule of statutory construction. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013).

Applying this construction to the present cases, I would affirm the judgments of the Tax Tribunal. Petitioners were selling their principal residences, the SEV of each property at the time of conveyance was lesser than the SEV at the time it was acquired, and the sales were conducted through arm's-length negotiations. Because the requirements of MCL 207.526(u) were met in all three cases, petitioners were entitled to the exemption, and therefore, the Tax Tribunal did not err by awarding refunds of the transfer tax that they each paid.