# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

GARDNER v DEPARTMENT OF TREASURY
NGO v DEPARTMENT OF TREASURY
MASELLI v DEPARTMENT OF TREASURY

Docket Nos. 150293, 150294, and 150295. Decided July 9, 2015.

After selling their principal residences, James and Susan Gardner, Liem and Alecia Ngo, and John and Jennifer Maselli sought refunds from the Department of Treasury of the transfer tax they had paid on the sales. The department denied the refund requests. Petitioners appealed in the Tax Tribunal, which reversed the department's decision in all three cases, holding that petitioners were entitled to refunds. The department appealed, and the appeals were consolidated by the Court of Appeals. The Court of Appeals, CAVANAGH, P.J., and STEPHENS, J. (OWENS, J., dissenting), reversed. 306 Mich App 546 (2014). Petitioners sought leave to appeal.

In a unanimous opinion per curiam, the Supreme Court, in lieu of granting leave to appeal and without hearing oral argument, *held*:

The State Real Estate Transfer Tax Act (SRETTA), MCL 207.521 *et seq*., generally imposes a tax on written instruments when the instrument is recorded. However, a written instrument is exempt from the tax, under MCL 207.526(u), when (1) the seller or transferor claimed a principal residence exemption for the property under MCL 211.7cc, and (2) at the time the property was conveyed, the state equalized value (SEV) was less than or equal to the SEV on the date the property was acquired. MCL 207.526(u) also contains a penalty clause, which states that after an exemption is claimed under Subsection (u), if the sale or transfer of property is found by the Treasurer to have been at a value other than true cash value, then a penalty equal to 20% of the tax shall be assessed in addition to the tax due under the act to the seller or transferor. "True cash value" as used in MCL 207.526(u) refers to the property's fair market value, namely the price that a willing buyer and a willing seller would arrive at through arm's-length negotiation. Therefore, the only instance in which the penalty clause would apply to preclude entitlement to the exemption is when a seller or transferor sold the property for an amount other than an amount at which a willing buyer and a willing seller would have arrived through arm's-length negotiation. Accordingly, to be entitled to the transfer tax exemption available under MCL 207.526(u), the petitioning taxpayer need only demonstrate that the property at issue is the principal residence of the seller or transferor, that it has an SEV at the time of conveyance that is less than or equal to the SEV at the time of acquisition, and that it was sold or transferred for a price at which a willing buyer and a willing seller would arrive through an arm's-length

negotiation. Because these elements were met in each of these consolidated cases, the Tax Tribunal properly determined that petitioners were entitled to a refund of the real estate transfer tax that they had paid. The Court of Appeals erred when it held that to be entitled to the exemption, petitioners must have sold their properties for exactly double the SEV at the time of sale.

Reversed; cases remanded to the Tax Tribunal for further proceedings.

©2015 State of Michigan

# OPINION

Chief Justice:          Justices:
Robert P. Young, Jr.    Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano
                        Richard H. Bernstein

FILED  July 9, 2015

S T A T E  O F  M I C H I G A N

SUPREME COURT

JAMES GARDNER and SUSAN
GARDNER,

        Petitioners-Appellants,

v                               No. 150293

DEPARTMENT OF TREASURY,

        Respondent-Appellee.

LIEM NGO and ALECIA NGO,

        Petitioners-Appellants,

v                               No. 150294

DEPARTMENT OF TREASURY,

        Respondent-Appellee.

JOHN MASELLI and JENNIFER
MASELLI,

       Petitioners-Appellants,

v                                  No. 150295

DEPARTMENT OF TREASURY,

       Respondent-Appellee.

_____

BEFORE THE ENTIRE BENCH

PER CURIAM.

In these consolidated appeals, we consider whether petitioners, who sold their principal residences in arm's-length transactions, are entitled to refunds of the real estate transfer tax under the real estate transfer tax exemption set forth in MCL 207.526(u) when the state equalized value of the properties at the time of sale was less than it was at the time of their original purchases. We hold that petitioners are entitled to refunds under the real estate transfer tax exemption in these circumstances. We therefore reverse the judgment of the Court of Appeals and remand these cases to the Tax Tribunal for further proceedings consistent with this opinion, including reinstatement of its judgments in favor of petitioners.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioners in these consolidated cases are all homeowners who sold their principal residences at a time when the state equalized value (SEV) of their respective properties

was less than the SEV at the time of their purchase.[1] Upon the sale of their homes, the petitioners paid a transfer tax under MCL 207.523 of the State Real Estate Transfer Tax Act (SRETTA), MCL 207.521 *et seq.*, and then requested a refund from respondent, the Department of Treasury, under MCL 207.526(u). That statute exempts from this tax a sale or transfer of a principal residence when, at the time of the conveyance, the property has an SEV that is "equal to or lesser than the [SEV] on the date of purchase or on the date of acquisition by the seller or transferor for that same interest in property." Significantly, this subsection includes a penalty clause under which a 20% penalty is assessed against the seller or transferor of property in the event that the treasurer finds that the sale or transfer was for "a value other than" the property's "true cash value."

Respondent separately denied petitioners' requests for a refund of the transfer tax, concluding that they were not entitled to the claimed exemption because each property sold for more than its "true cash value," which respondent interpreted to mean two times the property's SEV or less in the year of sale. Each petitioner thereafter appealed in the Michigan Tax Tribunal, which awarded refunds to petitioners on the ground that the

---

[1] Petitioners James and Susan Gardner acquired their principal residence in 2008 when the property's SEV was $464,300; they sold the property in 2010 for $875,000, when the SEV was $374,800.

Petitioners Liem and Alecia Ngo acquired their principal residence in 2007, when the property's SEV was $321,180; they sold the property in 2011 for $464,000, when the SEV was $219,860.

Petitioners John and Jennifer Maselli acquired their principal residence in 2004 when the property's SEV was $303,370; they sold the property in 2011, when the SEV was $198,530.

3

conveyances were exempt under MCL 207.526(u). In reaching this conclusion, the Tax Tribunal observed that the first portion of the statute unambiguously indicates that the exemption applies if, at the time of sale, the property's SEV is less than or equal to the SEV at the date of acquisition. However, the Tax Tribunal determined that the penalty clause renders the statute ambiguous because its literal reading would mean that the exemption applies only when the sale price of the property is exactly twice the property's SEV. The Tax Tribunal, reasoning that statutes must be construed to avoid absurd results, concluded that the Legislature intended for petitioners to be granted the exemption. Finally, when petitioners had presented market evidence that the sale of each property was for its "true cash value" and respondent had failed to provide any market evidence to the contrary, the Tax Tribunal found that the penalty clause did not apply.[2]

The Court of Appeals consolidated these cases and reversed the Tax Tribunal's refund award in a split published opinion.[3] Contrary to the Tax Tribunal's determination, the majority concluded that MCL 207.526(u) is unambiguous in its entirety and that the exemption only applies if the property's SEV at the time of its sale is precisely twice the property's SEV at the time of its purchase. Relying on the definition of "true cash value" provided under the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, the majority defined the term as used in MCL 207.526(u) to "require[] consideration of how much

---

[2] Because the Court of Appeals properly affirmed the Tax Tribunal's finding in this regard, there is no dispute that these petitioners are not subject to the 20% penalty. However, the general applicability of the penalty is still before this Court.

[3] *Gardner v Treasury Dep't*, 306 Mich App 546; 858 NW2d 76 (2014).

4

claimants of the transfer tax exemption were paid for their respective properties compared to how much their properties were worth for taxation purposes."[4]  Because petitioners sold their properties for a value that was not equal to twice the property's SEV at the time of purchase, the majority held that the transfer tax was properly paid.  The issue before this Court, then, is whether the Court of Appeals' construction of MCL 207.526(u) is both supported by the statutory language and reflective of the Legislature's intent.

## II.  STANDARD OF REVIEW

We review questions of statutory interpretation de novo.[5]  When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to ascertain and give effect to the intent of the Legislature.[6]  We begin this analysis by examining the language of the statute itself, as this is the most reliable evidence of that intent.[7]  If the language of a statute is clear and unambiguous, we presume that the Legislature intended the meaning clearly expressed. Accordingly, the statute must be enforced as written and no further judicial construction is permitted.[8]  To the extent

---

[4] *Id*. at 555.

[5] *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013).

[6] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[7] *Id*.

[8] *Id*.

5

possible, effect should be given to every phrase, clause, and word in the statute, and no word should be treated as surplusage or rendered nugatory.[9]

## III. ANALYSIS

MCL 207.525(1) imposes a real estate transfer tax at the rate of $3.75 per $500.00 of the total value of the property being transferred. However, MCL 207.526 exempts from this tax certain written instruments and transfers of property. Relevant to this case is subsection (u), which provides an exemption for a transfer effectuated by

> [a] written instrument conveying an interest in property for which an exemption is claimed under section 7cc of the general property tax act, 1893 PA 206, MCL 211.7cc, if the state equalized valuation of that property is equal to or lesser than the state equalized valuation on the date of purchase or on the date of acquisition by the seller or transferor for that same interest in property. If after an exemption is claimed under this subsection, the sale or transfer of property is found by the treasurer to be at a value other than the true cash value, then a penalty equal to 20% of the tax shall be assessed in addition to the tax due under this act to the seller or transferor.

Reduced to its elements, a seller or transferor of property is entitled to this exemption if (1) the seller or transferor claimed a principal residence exemption for the property under MCL 211.7cc, and (2) the SEV at the time the property was conveyed was equal to or lesser than the SEV on the date the property was acquired. In these cases, no one disputes that all three petitioners sold their principal residences and that the SEV of their respective properties had declined since the date of purchase. What is in dispute is the meaning of "true cash value" as used in the second sentence of MCL 207.526(u)—the

---

[9] *Id.* at 237.

6

penalty clause—and the extent to which that meaning controls the concept of SEV as contemplated in the first sentence of this subsection.

Petitioners contend that the proper understanding of "true cash value" for purposes of MCL 207.526(u) is the property's fair market value at the time it is sold. Under this theory, the exemption would apply if the SEV at the time the property is conveyed is equal to or lesser than the SEV on the date the property was acquired, unless it is determined by the Treasurer that the sale or the transfer of the property was at a value other than the property's fair market value. Respondent argues that "true cash value" is a term of art that means the value assigned by the assessor in that tax year, which will always equal the property's SEV multiplied by two because property is assessed at 50% of its true cash value,[10] subject to county equalization.[11]

While SRETTA does not define "true cash value," it defines the word "value" as "the current or fair market worth in terms of legal monetary exchange at the time of the transfer."[12] The GPTA, however, does offer a definition of "true cash value:"

> As used in this act, "true cash value" means the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at

---

[10] See MCL 211.27a(1); see also MCL 205.737(2) (directing the Tax Tribunal that, when determining the SEV in an assessment dispute, "[t]he property's state equalized valuation shall not exceed 50% of the true cash value of the property on the assessment date").

[11] MCL 211.34(2) (providing the method by which a property's SEV is to be assessed).

[12] MCL 207.522(g).

private sale, and not at auction sale except as otherwise provided in this section, or at forced sale . . . .[13]

Nevertheless, caselaw treats the concept of true cash value as being synonymous with "fair market value." For instance, in *CAF Investment Co v State Tax Comm*,[14] this Court, after examining various provisions of the GPTA and corresponding caselaw, defined the term as "the usual selling price that could be obtained at the time of assessment, but not the price that could be obtained at a forced or auction sale." Similarly, in *Detroit Lions, Inc v Dearborn*, the Court of Appeals noted that "true cash value" refers to " 'the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation.' "[15]

The Court of Appeals erred when it held that, to be entitled to the exemption, petitioners must have sold their properties for exactly double the SEV at the time of the sale. To illustrate this logic, we turn to the specific dollar values involved in the Gardner case. As previously indicated, the Gardners paid $950,000 to acquire their principal residence in 2008 when the property's SEV was $464,300. Two years later, they sold the

---

[13] MCL 211.27(1). This subsection likewise enumerates a list of factors, such as zoning, quality of soil, advantages and disadvantages of location, and current economic income of structures, to be used as guidelines in an attempt to determine the fair market value of a property. However, "[a]ny method for determining true cash value which is recognized as acceptable and reasonably related to fair market valuation . . . is an acceptable indicator of true cash value" of real property. *CAF Investment Co v State Tax Comm*, 392 Mich 442, 450 n 2; 221 NW2d 588 (1974).

[14] *Id.* at 450, quoting *Moran v Grosse Pointe Twp*, 317 Mich 248, 254; 26 NW2d 763 (1947).

[15] *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013), quoting *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007).

property for $875,000, when the SEV was $374,800.[16]   Under the majority's interpretation, the property's true cash value at the time of sale was $374,800 multiplied by two, or $749,600.   Consequently, the Gardners were not entitled to the claimed exemption because they sold their property for $875,000, which was an amount "other than" $749,600.[17]   Yet contrary to the Court of Appeals majority's understanding, nothing in the statute states or even suggests that application of the exemption be limited to such exacting circumstances.  Instead, all that need be shown in this regard is that the SEV be the same or lower at the time of sale than when the property was first acquired. Nor is there support for the majority's sweeping and unprecedented interpretation of the penalty clause, which, according to the majority, applies whenever property is sold for an amount "different" from twice the property's SEV at the time it is sold.[18]

---

[16] The SEV for the Gardners' property in 2008 and 2010 was according to assessing information provided in a BS&A Software report.

[17] That the Gardners sold their property for a value greater than $749,600 is irrelevant to this analysis; under the Court of Appeals majority's interpretation, if they had sold the property for $749,599, they would not have been entitled to the exemption and, indeed, would have been assessed the 20% penalty in the absence of undisputed market evidence that the sale was for its "true cash value."

[18] *Gardner*, 306 Mich App at 557.  Even respondent disagrees with the Court of Appeals majority's construction of the phrase "other than."   Rather, as contemplated under the penalty clause, respondent has long been interpreting the phrase "other than" to mean that the 20% penalty may be imposed when the property is sold for an amount "greater than" twice the property's SEV at the time of sale.  This construction, according to respondent, is consistent with the statute's purpose of allowing for a transfer tax exemption in a declining market.

It is very unlikely—particularly in the absence of any textual indicia—that the Legislature impliedly intended the property's "true cash value" to mean precisely twice its SEV. Rather, the interpretation that best effectuates the legislative intent of MCL 207.562(u) is the one properly recognized by the Court of Appeals dissent; namely, that the exemption requires an arm's-length transaction, which, by definition, gives the property its true cash value. As previously indicated, a property's "true cash value" has been defined in our caselaw to mean the property's "fair market value," thereby referring to "the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation."[19] By this definition, then, the only instance in which the penalty clause would apply to preclude an exemption is when a seller or transferor sold the property for an amount other than an amount at which a willing buyer and a willing seller would have arrived through arm's-length negotiation.

Additional support compels this construction of the statute. Because the first sentence in MCL 207.526(u) exempts from the real estate transfer tax those sales or transfers that produce an SEV "equal to or lesser than" the property's SEV at the time of acquisition, the exemption itself was clearly designed to protect sellers and transferors conducting sales in declining or depressed real estate markets so long as those sales are conducted in a legitimate manner. However, because the penalty clause permits the Treasurer to reject a requested exemption and impose a penalty when the sale or transfer of property is for something "other than" the property's "true cash value," the second

---

[19] *Detroit Lions*, 302 Mich App at 696.

portion of the statute plainly serves as a deterrent against the underhanded sale of property as a means to avoid the real estate transfer tax. By penalizing only those sellers and transferors who seek this exemption under such circumstances, the Legislature clearly sought to punish and discourage only those transactions that are not arm's-length market-value sales. In short, there is no basis, textually or logically, for the Court of Appeals' interpretation of MCL 207.526(u) as requiring that, to be entitled to the exemption and to avoid the 20% penalty, a seller or transferor must demonstrate that the sale price of the property at the time it was sold equaled exactly twice its SEV.

## IV. CONCLUSION

To be entitled to the transfer tax exemption under MCL 207.526(u), the petitioning taxpayer need only demonstrate that the property at issue is the principal residence of the seller or transferor, that it has an SEV at the time of conveyance that is less than or equal to the SEV at the time of acquisition, and that it was sold or transferred for a price at which a willing buyer and a willing seller would arrive through arm's-length negotiation. Because each of these elements was met in these consolidated cases, the Tax Tribunal properly determined that petitioners were entitled to a refund of the real estate transfer tax they paid.[20] In lieu of granting petitioners' joint application for leave to appeal, we

---

[20] We note that the Gardners requested a transfer tax refund in the amount of $7,125, which is based on the $950,000 purchase price of their home rather than its $875,000 sale price. This is inconsistent with the requirement in MCL 207.525(1) that the transfer tax be calculated based on the total value of the property "being transferred." Although the Gardners' refund might have been erroneously calculated, on remand, we direct the Tax Tribunal to revisit this calculation to ensure that the Gardners receive a refund equal to the amount that they initially paid.

11

reverse the judgment of the Court of Appeals and remand these cases to the Tax Tribunal for further proceedings consistent with this opinion, including reinstatement of its judgments in favor of petitioners.

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein