PEOPLE *v.* MIDDLETON.

1. CRIMINAL LAW—INTOXICATING LIQUORS—ON MOTION TO SUPPRESS
   ONLY FACTS ALLEGED IN AFFIDAVIT GOING TO JURISDICTION MAY
   BE TRAVERSED.

   On motion to suppress evidence of violation of the prohibition
   law, obtained by search of a private dwelling under a search
   warrant, the accused may not traverse facts alleged in the
   affidavit which do not go to the jurisdiction.

2. INTOXICATING LIQUORS—MOTION TO SUPPRESS PROPERLY OVER-
   RULED.

   Motion to suppress evidence of violation of prohibition law, *held*,
   properly overruled.

3. SAME—WHETHER PEOPLE REQUIRED TO ESTABLISH POTABILITY OF
   LIQUOR NOT DECIDED.

   Whether section 3, Act No. 53, Pub. Acts 1919, requires the
   people to establish, in a prosecution for illegal possession of
   intoxicating liquors, that the liquor in defendant's possession
   is capable of being used as a beverage, is not herein decided;
   the evidence in the instant case being sufficient to take said
   question to the jury.

4. SAME—ILLEGAL POSSESSION—BOARDERS NOT IN POSSESSION WHERE
   NONE IN ROOM OR UNDER THEIR CONTROL.

   Where, in a prosecution for illegal possession of intoxicating
   liquors, the evidence shows that defendants were merely
   boarders in the house where the liquor was found, none was
   found in their room, and they are not shown to have had any-
   thing to do with that found, the evidence is insufficient to
   sustain their conviction.

Error to Washtenaw; Sample (George W.), J.
Submitted October 11, 1928. (Docket No. 119, Cal-
endar No. 33,502.) Decided December 4, 1928.

Alonzo Middleton and Floyd Wing were convicted
of violating the liquor law. Affirmed as to defendant
Middleton, and reversed as to defendant Wing and
said defendant discharged.

*Edward F. Conlin (Andrew J. Sawyer* and *John W. Conlin,* of counsel), for appellants.

*Wilber M. Brucker,* Attorney General, and *Carl H. Stuhrberg,* Prosecuting Attorney, for the people.

Fellows, J.   Alonzo Middleton and his wife, Carrie B., Floyd Wing and his wife, Ruth, were jointly prosecuted and convicted of having in their possession intoxicating liquor.   What disposition was made of the conviction of the wives does not appear from the record.   Alonzo and Floyd alone review their convictions.   The home was owned by Mrs. Middleton and was occupied by her and her husband.   Ruth Wing was their daughter, and defendants' testimony establishes beyond question that she and her husband with their little baby were temporarily staying with her parents and paying board while they were completing a house of their own.   There was a search of the premises under a valid search warrant based on an affidavit, correct in form, sworn to by one Hagen stating that he purchased a gallon of whisky of defendant Middleton at the premises on July 3, 1927, at about 5 o'clock in the afternoon.

1. Defendants' motion to suppress was supported by several affidavits, all tending to show that none of the defendants were at the Middleton home at or about 5 o'clock of July 3d.   Defendants called Hagen and examined him in open court.   His testimony established, if believed, that he was mistaken in the date, and he testified that he purchased the liquor on the 2d.   The showing of absence from home on this date was quite negligible.   Defendants insisted in the court below, and do here, that they were justified in denying the truth of the facts alleged in the affidavit on their motion to quash on the authority

of *People* v. *Burt,* 236 Mich. 62. While we would be justified in disposing of this question by simply saying that if the showing made presented a question of fact for the determination of the court, the trial judge correctly decided it, we do not think we should even tacitly acquiesce in the contention that the *Burt Case* opens the door to a denial of or a trial upon all the facts alleged in the affidavit, those which do not go to the jurisdiction as well as those which do. In that case we had before us the method to be used to effectuate the portion of section 30, Act No. 336, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 7079[30]), which protected the private dwelling from unreasonable search, and which rendered it immune from such search so long as it retained the character of a purely private home. Mr. Justice BIRD there entertained the view that the people must establish on the trial that it had lost such private character before there could be a conviction. The balance of the court agreed that the legislature had expressly inhibited the search under a search warrant of a purely private home and had guaranteed its owner from such unreasonable search and that such right could be protected by permitting the home owner, on a motion to suppress, to traverse the allegations of the affidavit that the house was used for a prohibited purpose. So if it had been alleged in the affidavit that the home was a "place of public resort," etc., the proper place to dispute and try out that question was on motion to suppress. What the court there held was that the section cited guaranteed to the purely private dwelling the right of immunity from unlawful search and pointed out the method of protecting such right. It was not intended and clearly was not held, that the section cited opened the door to a trial of all and every allega-

tion of fact set up in the affidavit. The trial judge both as matter of fact and of law correctly over-ruled the motion to suppress.

2. It is next urged that the section of the act (section 3, Act No. 53, Pub. Acts 1919 [Comp. Laws Supp. 1922, § 7079(3)]) defining "intoxicating liquors," requires that the liquors be "capable of being used as a beverage" and it is insisted that there may not be a conviction unless the people establish that the liquor in question was potable. *State* v. *Umlauf*, 169 Minn. 422 (211 N. W. 475), is relied upon, and it unequivocally supports defendants' contention. Defendants moved for a directed verdict on this ground. We need not at this time decide whether we will follow the Minnesota holdings or not, as we are satisfied that there was sufficient testimony that the liquor was drinkable to take the question to the jury. The sheriff testified:

"There was an aunt or mother-in-law in the kitchen, then we proceeded through the dining room into the front room. There were four men in the front room drinking, but none of them were the respondents. Mr. West went upstairs and brought some intoxicating liquor down. It was delivered over to my possession then and I loaded it into my car and took it to the jail and delivered it to a chemist."

Of the liquor seized one sample disclosed an alcoholic content of 33.40 per cent., another 32.20 per cent., another 37.85 per cent. If the four men were drinking the liquor it was some evidence that it was potable; if it contained the alcoholic content testified to by the chemist, it was intoxicating. The court did not err in refusing to direct a verdict for this reason.

3. All the testimony on the subject showed that Mr. and Mrs. Wing were temporarily boarding with Mr. and Mrs. Middleton, paying $5 a week each for their board, and waiting until their own home was ready for occupancy. Mr. Wing worked for the Standard Oil Company. They had a room upstairs and were getting ready for bed when the raid was made. No liquor was found in their room, and there is not a word of testimony showing that they, or either of them, had anything to do with it. Defendants' counsel moved for a directed verdict for them, which motion was refused. He also preferred an appropriate request on the subject, which likewise was refused, and the court charged the jury:

"And you are further charged that it is the law that it is not necessary that the respondents actually have the intoxicating liquor (I have given that to you in another way) in question in this case in their physical possession, but if this liquor was in the home occupied by the respondents, it is, under the law, in their possession, and it is your duty to render a verdict of guilty as charged against all of said respondents, if you so find beyond a reasonable doubt."

Upon this branch of the case the trial judge was clearly in error. Earlier decisions pointed the way to a correct decision of this question, but it was directly decided in *People* v. *Harter,* 244 Mich. 346, handed down since the trial of the instant case in the court below.

The conviction of defendant Middleton will be affirmed, that of defendant Wing reversed, and he will be discharged.

FEAD, C. J., and NORTH, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred. POTTER, J., did not sit.