# STATE OF MICHIGAN

# COURT OF APPEALS

FRANK KERN III,

      Plaintiff-Appellant/Cross-Appellee,

v

BONNIE KERN-KOSKELA, LARRY
KOSKELA, CHRISTOPHER KELLY,
MAXITROL COMPANY, and MERTIK
MAXITROL, INC,

      Defendants-Appellees/Cross-
      Appellants,

and

DAVID KALL, MICHAEL LATIFF, and
MCDONALD HOPKINS LLC,

      Defendants-Appellees.

FOR PUBLICATION
June 20, 2017
9:00 a.m.

No. 330183
Oakland Circuit Court
LC No. 2012-127856-CB

Before: STEPHENS, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Plaintiff appeals by right from a final order reforming a lease contract. However, several issues on appeal relate to the trial court's prior orders dismissing a number of plaintiffs' claims and granting summary disposition. The individual defendants and Maxitrol cross-appeal from the final order, arguing that they were entitled to attorney fees and costs. Finding no error warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff and his sister, defendant Bonnie Kern-Koskela, both own a 50 percent interest in Maxitrol and Mertik Maxitrol. Plaintiff, Kern-Koskela and Kern-Koskela's husband[1], Larry Koskela, compose Maxitrol's board of directors. Kern-Koskela serves as the Board's Chair and

---

[1] We will refer to Kern and Kern-Koskela by name or as individual defendants.

as the Executive Vice President and Chief Executive Officer of Maxitrol. Koskela serves as the Board's Vice Chair and as President and Chief Operating Officer of Maxitrol. Defendant Christopher Kelly is Maxitrol's Chief Financial Officer and Vice President of Finance. Defendants David Kall, Michael Latiff and McDonald Hopkins, LLC, served as counsel for the corporate defendants.

In 2012, plaintiff sued the individual defendants and Kelly for shareholder oppression and breach of fiduciary duty, asserting that Kern-Koskela excluded plaintiff from any control or oversight over the corporations and was mis-managing the businesses so as to enrich herself at the expense of the corporations and plaintiff. Plaintiff alleged a myriad of wrongdoing. For purposes of this appeal, the focus is on a lease agreement between Bates Group, LLC, a company wholly owned by the individual defendants, and Maxitrol – the so-called M-Annex lease. Plaintiff also made claims against corporate counsel defendants, arguing that they owed a fiduciary duty to him as a shareholder in a closely-held corporation and breached that duty by performing legal work for Kern-Koskela at the same time they were serving as corporate counsel for Maxitrol.

The trial court granted corporate counsel summary disposition, finding that there was no fiduciary relationship between plaintiff and corporate counsel. Thereafter, Maxitrol moved for the appointment of a "disinterested person" pursuant to MCL 450.1495 to investigate whether the continuation of plaintiff's derivative suit was in the best interests of the corporation. The trial court appointed attorney Joel H. Serlin to act as a "disinterested person" under the act and charged him with investigating whether the continuation of plaintiff's suit was in the best interests of the corporation. Serlin's July 7, 2014 report concluded:

> As the Disinterested Person, the undersigned has expended considerable time and effort in reviewing and analyzing all of the information, documentation and claims presented. Disputes involving family members of a closely held corporation, where each party is a 50% Shareholder, are among the most difficult to reconcile, and resolve. During the undersigned's lengthy investigation of the issues presented, it was clear that all witnesses, respective counsel, and the submissions presented to the undersigned were done so in a highly professional and forthright manner. After a comprehensive investigation, the undersigned makes the following recommendations:
>
> 1. Plaintiff Frank Kern III should be permitted to proceed with a derivative claim related to the M Annex, and the Annex Lease, entered into by and between Bates Group, LLC and Defendant Maxitrol Company, because those transactions may have constituted usurpation of a corporate opportunity and self-dealing.
>
> 2. As owners of Bates Group, LLC (the landlord), Defendants Bonnie Kern-Koskela and Larry Koskela, as well as Defendant Maxitrol Company (the tenant), are necessary parties to the derivative claim.
>
> 3. The Disinterested Person finds that all remaining claims asserted by Plaintiff Frank Kern III lack merit, and to proceed with those derivative claims would not be in the best interest of the Companies.

4. The Disinterested Person further finds that Defendant Christopher Kelly has not breached his fiduciary duties or acted improperly, and no derivative claims should proceed against him.

Based on Serlin's report, Maxitrol sought dismissal solely in reliance on Serlin's report. Kern-Koskela, Koskela and Kelly joined the motion. Plaintiff responded, in part, by challenging the constitutionality of MCL 450.1495 as a violation of the separation of powers doctrine as well as an improper delegation of the trial court's constitutionally-mandated function to a non-judicial court-appointed advisory expert. The trial court indicated that the motion was more properly characterized as a motion to dismiss brought under MCL 450.1495 and rejected plaintiff's constitutional claims. In a written opinion read into the record, the trial court concluded that Serlin's determination was made in good faith after conducting a reasonable investigation. Consequently, MCL 450.1495 required dismissal of those claims that Serlin determined should not proceed. The trial court dismissed with prejudice plaintiff's third amended complaint against Mertik and Kelly. He also dismissed plaintiff's third amended complaint "as to Defendants Bonnie Kern-Koskela, Larry Koskela, and Maxitrol Company – with the exception of Plaintiff's claim 'related to the M Annex, and the Annex Lease, entered into by and between Bates Group, LLC and Defendant Maxitrol Company' – which may proceed to trial."

The jury found that the lease was unfair to Maxitrol and that Maxitrol was damaged in the amount of $51,015. The trial court denied a number of post-judgment motions.

## II. DISMISSAL OF CLAIMS BASED ON THE DISINTERESTED PERSON'S REPORT

Plaintiff raises constitutional challenges to MCL 450.1495. First he argues that to the extent the statute dictates a procedure for summary disposition, the statute should be declared unconstitutional as a violation of Michigan's separation of powers doctrine, Const. 1963, art. 3 § 2, Const. 1963 art. 6 § 1, and Const. 1963 art. 6 § 5. Next, plaintiff argues that the statute is also unconstitutional because it commands the judiciary to delegate its constitutionally mandated function and adopt the findings of a non-judicial court-appointed disinterested person. Finally, plaintiff maintains that, even assuming that the statute is constitutional, the trial court erred in granting summary disposition where there were numerous questions of fact regarding plaintiff's claims for removing Kern-Koskela and Koskela as corporate officers and for an accounting. We reject each of these challenges.

This Court reviews constitutional questions de novo. *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). "[A] statute is presumed to be constitutional unless its unconstitutionality is clearly apparent." *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999).

Plaintiff asserts that MCL 450.1495 violates the separation of powers doctrine because the statute impermissibly infringes on our Supreme Court's exclusive authority under Const 1963, art 6, § 5, to promulgate rules governing procedure by providing a procedural mechanism for summary disposition. As observed in *McDougall*:

-3-

It is beyond question that the authority to determine rules of practice and procedure rests exclusively with this Court. Indeed, this Court's primacy in such matters is established in our 1963 Constitution:

> The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state.

This exclusive rule-making authority in matters of practice and procedure is further reinforced by separation of powers principles. See Const 1963, art 3, § 2; *In re 1976 PA 267*, 400 Mich 660; 255 NW2d 635 (1977). Thus, in *Perin v Peuler (On Rehearing)*, 373 Mich 531, 541; 130 NW2d 4 (1964), we properly emphasized that "[t]he function of enacting and amending judicial rules or practice and procedure has been committed exclusively to this Court . . . ; a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will."

> At the same time, it cannot be gainsaid that this Court is not authorized to enact court rules that establish, abrogate, or modify the substantive law. *Shannon v Ottawa Circuit Judge*, 245 Mich 200, 223; 222 NW 168 (1928). Rather, as is evident from the plain language of art 6, § 5, this Court's constitutional rule-making authority extends *only* to matters of practice and procedure. *Shannon, supra* at 222-223. . . . [*McDougall*, 461 Mich at 26-27 (footnotes omitted; italics in original).]

This Court need not address plaintiff's constitutional challenge, however, if MCL 450.1495 and MCR 2.116(C)(10) can be construed so as not to conflict. *McDougall*, 461 Mich at 24. "When there is no inherent conflict, '[w]e are not required to decide whether [the] statute is a legislative attempt to supplant the Court's authority.'" *McDougall*, 461 Mich at 24, quoting *People v Mateo*, 453 Mich 203, 211; 551 NW2d 891 (1996). Moreover, this Court should 'not lightly presume that the Legislature intended a conflict, calling into question this Court's authority to control practice and procedure in the courts.' *McDougall*, 461 Mich at 24, quoting *People v Dobben*, 440 Mich 679, 697 n 22; 488 NW2d 726 (1992). Despite plaintiff's protestations to the contrary, MCL 450.1495 and MCR 2.116(C)(10) do not inherently conflict.

The purpose of MCL 450.1495 was cogently summarized in *Virginia M Damon Trust v North Country Financial Corporation*, 406 F Supp 2d 796, 800-801(WD Mich 2005), as follows:

> . . . The purpose of the section [MCL 450.1495] is to give a corporate board an honest, informed, and objective opinion on whether maintaining particular litigation is in the best interests of the corporation. Derivative claims are, after all, claims on behalf of the corporation, not an investor. The Michigan statute allows the court to put this determination in the hands of one or more disinterested persons appointed by the court. . . . This statutory scheme is designed to save the corporation money in defending or prosecuting a weak case originally bought as a derivative claim and to give the corporation the incentive to take the case if the derivative claims have merit. . . .

The purpose of MCR 2.116(C)(10) is to "avoid extensive discovery and an evidentiary hearing when a case can be quickly resolved on an issue of law." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 324; 675 NW2d 271 (2003); see also *American Community Mut Ins Co v Commissioner of Ins*, 195 Mich App 351, 362; 491 NW2d 597 (1992).

In light of these stated purposes, MCL 450.1495 and MCR 2.116(C)(10) do not conflict. The statute allows a disinterested party to stand in the stead of the corporation and determine, on behalf of the corporation, whether a continuation or dismissal of any portion of the derivative suit is in the best interests of the corporation. The court rule allows for an ongoing suit to be quickly resolved, in the absence of material factual issues, on the merits of the legal questions raised. Thus, MCL 450.1495 addresses the question whether a suit should be maintained in the first instance to vindicate the rights of the corporation, while MCR 2.116(C)(10) addresses which party prevails on the merits. Under MCL 450.1495, the trial court never reaches the merits of the underlying claims. Rather, the court may only conduct a limited inquiry into the process employed by the interested person or persons; i.e., whether the investigation was reasonable and whether the determination was made in good faith, if the independence of the process is challenged by the plaintiff. Otherwise, the business judgment of the disinterested person or persons is not subject to judicial scrutiny. Thus, the statute and court rule address different concerns at different stages of a civil proceeding. For these reasons, the statute and the court rule do not inherently conflict. *McDougall*, 461 Mich at 24.

Plaintiff also argues that MCL 450.1495 is unconstitutional because it mandates that a trial court delegate its judicial powers to a person or group of persons who are outside the judiciary.

"It is within the peculiar province of the judiciary to adjudicate upon and protect the rights and interests of the citizens and to construe and apply the laws." *Carson Fischer Potts and Hyman v Hyman*, 220 Mich App 116, 121; 559 NW2d 54 (1996). As observed in *Carson Fisher*:

> . . . The judicial branch is provided for in article 6 of our state constitution. Const 1963, art 6, § 1 provides:
>
>> The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.
>
> Further, Const 1963, art 6, § 27 provides:
>
>> The supreme court, the court of appeals, the circuit court, or any justices or judges thereof, shall not exercise any power of appointment to public office except as provided in this constitution.
>
> In Michigan, judicial power is vested in the courts under our state constitution. *Johnson v Kramer Bros Freight Lines, Inc*, 357 Mich 254, 258; 98

-5-

NW2d 586 (1959). Although the Supreme Court is empowered by the Michigan Constitution to authorize persons who have been elected and have served as judges to perform judicial duties for limited periods or specific assignments, Const 1963, art 6, § 23, there are no constitutional or statutory authorities permitting a circuit court judge the power to appoint a retired judge or any other person to sit as a court in a civil action. *Brockman v Brockman*, 113 Mich App 233, 237; 317 NW2d 327 (1982). Rather, Const 1963, art 6, § 27 specifically prohibits such action. . . . [*Carson Fischer*, 220 Mich App at 120.]

Plaintiff's delegation of duties argument is predicated on a misapprehension of the workings of MCL 450.1495. The statute does not mandate a trial judge to delegate his or her judicial duties to an individual or individuals outside the judicial realm. Rather, as previously noted, the disinterested person or group of persons stand in the stead of the corporation, on behalf of which the derivative suit was brought, and exercises the decision-making authority of the corporation in good faith and after reasonable investigation to determine whether the best interests of the corporation will be served if the suit or any portion of the suit continues. The disinterested person does not make recommendations to the trial judge regarding the merits of the claim or claims advanced in the derivative action and the trial judge makes no ruling on the merits. The statute only requires the court to respect and implement the business judgment of the disinterested person or persons regarding whether any portion of the suit should continue if the process by which the decision was made was reasonable and undertaken in good faith. For these reasons, plaintiff's constitutional challenge must fail.

Finally, plaintiff argues that even assuming that the statute is constitutional, the trial court erred in granting summary disposition where there were numerous questions of fact regarding plaintiff's claims for removing Kern-Koskela and Koskela as corporate officers and for an accounting, especially in light of the jury's later determination that the lease was unfair to Maxitrol. However, the trial court did not grant summary disposition under MCR 2.116(C)(10); instead, the trial court dismissed the action under MCL 450.1495:

> In the present motion, Maxitrol argues that certain of Plaintiff's claims should be dismissed as Mr. Serlin determined that continuing their pursuit was not in the corporations' best interests.
>
> In response, Plaintiff argues that Maxitrol's procedural choice to move under MCR 2.116(C)(10) is wrong because it would not allow the Court to consider Mr. Serlin's report. The Court agrees that Plaintiff's motion is one properly brought under MCL 450.1495 (and not MCR 2.116(C)(10), but Maxitrol also brought the present motion under MCL 450.1495. As a result, the Court rejects each of Plaintiff's arguments related to the Court's ruling on a (C)(10) motion. The Court's ruling is based solely on application of MCL 450.1495. [11/19/14 Opinion and Order, p 2.]

We reject plaintiff's attempt to frame the issue in a manner inconsistent with the lower court record.

### III. SUMMARY DISPOSITION IN FAVOR OF CORPORATE COUNSEL

Plaintiff argues that corporate counsel owed him a fiduciary duty under *Fassihi v Sommers, Schwartz, Silver, Schwartz & Tyler*, 107 Mich App 509; 309 NW2d 645 (1981) and that the trial court erred in granting corporate counsel summary disposition. We disagree.

Summary disposition under MCR 2.116(C)(10) should be granted where the affidavits or other documentary evidence show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999). To avoid summary disposition under MCR 2.116(C)(10) the party opposing the motion must show, via affidavit or documentary evidence, that a genuine issue of fact exists for trial. *Smith*, 460 Mich 455-456 n 2; MCR 2.116(G)(4). As a general rule a motion for summary disposition under MCR 2.116(C)(10) is premature if discovery has not been completed, unless there is no fair likelihood that further discovery will yield support for the nonmoving party's position. *Liparoto Construction, Inc v General Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009).

Whether a fiduciary relationship exists is a question of law for the court to decide. *Prentis Family Foundation Inc v Karmanos Cancer Center*, 266 Mich App 39, 43; 698 NW2d 900 (2005), lv den 474 Mich 871 (2005).

The trial court did not err when it granted summary disposition on plaintiff's breach of fiduciary duty claim against corporate counsel. Even where the number of shareholders is very small, a corporation exists as a separate legal entity apart from its shareholders. *Fassihi*, 107 Mich App at 514. When an attorney is hired to represent a corporation, his client is the corporation rather than the shareholders of that corporation. *Prentis Family Foundation*, 266 Mich App at 44; *Fassihi*, 107 Mich App at 514. A fiduciary relationship may arise between corporate counsel and a shareholder where the non-client shareholder reposed "faith, confidence, and trust" in the lawyer's advice or judgment. *Beaty v Hertzberg & Golden, PC* 456 Mich 247, 260-261; 571 NW2d 716 (1997); *Prentis Family Foundation*, 266 Mich App at 43-44. However, that placement of trust, confidence, and reliance must be reasonable, and is not reasonable if the interests of the client and non-client are adverse or potentially adverse. *Id*.

Plaintiff's claim against corporate counsel was not brought on behalf of Maxitrol, but instead on his own behalf as a shareholder of closely-held corporations. While the shareholders of a closely-held corporation may often "repose their faith, confidence, and trust" in the advice or judgment of the corporation's counsel, courts cannot assume that this is always true. *Fassihi*, 107 Mich App at 516. In this case, plaintiff presented no evidence which would suggest that he reposed his faith, confidence, and trust in the advice or judgment of the corporate counsel. Plaintiff's own affidavit states that he communicated with the corporate attorneys through his own personal attorney and did so when demanding to review the corporate financial records. He has presented nothing which suggests that he had any other significant communications with the corporate attorneys. Since plaintiff had no communications with corporate counsel, he did not place faith, confidence or trust in their advice or judgment. Even if plaintiff had relied on communications or advice from the attorney defendants, that reliance would not have been reasonable under the circumstances. The context of plaintiff's contacts with corporate counsel, where he communicated through his own counsel and demanded to review the corporations' financial records, indicates a potentially adverse relationship with corporate counsel.

Nor was it improper for the trial court to grant summary disposition on this issue before discovery was completed. Plaintiff was obviously aware of his own communications with the attorney defendants and should have been able to identify any instances where he relied upon or trusted their advice or judgment. He did not set forth any such facts in his own affidavit. Since there was no fair likelihood that further discovery would provide support for plaintiff's position, the court properly granted summary disposition under MCR 2.116(C)(10) before discovery was completed.

## IV. DISQUALIFICATION OF CORPORATE COUNSEL

Plaintiff argues that the trial court erred in denying plaintiff's motion to disqualify corporate counsel based on its conflict of interest. We decline to address this issue based on plaintiff's failure to provide the relevant transcripts.

Plaintiff moved to disqualify corporate counsel "under both MRPC 1.13 and 1.7, as well as *Fassihi*." Plaintiff argued that, under MRPC 1.13, a lawyer retained by an organization represents the organization and not the individual shareholders. Plaintiff alleged that corporate counsel had assisted the individual defendants with their "self-dealing and usurpation of corporate opportunity" by reviewing the M-Annex lease. Plaintiff argued that MRPC 1.7(b) required that corporate counsel be disqualified. The trial court denied the motion after a hearing on November 10, 2014. No hearing transcripts have been provided.

MCR 7.210(B)(1)(a) provides:

(B) Transcript.

(1) *Appellant's Duties; Orders; Stipulations.*

(a) The appellant is responsible for securing the filing of the transcript as provided in this rule. Except in cases governed by MCR 3.977(J)(3) or MCR 6.425(G)(2), or as otherwise provided by Court of Appeals order or the remainder of this subrule, the appellant shall order from the court reporter or recorder the full transcript of testimony and other proceedings in the trial court or tribunal. Once an appeal is filed in the Court of Appeals, a party must serve a copy of any request for transcript preparation on opposing counsel and file a copy with the Court of Appeals.

"[T]his Court will refuse to consider issues for which the appellant failed to produce the transcript." *PT Today, Inc v Comm'r of Office of Fin & Ins Services*, 270 Mich App 110, 151–152; 715 NW2d 398 (2006). However, the Court may consider an issue if the transcript was not relevant to the issue on appeal or if the issue on appeal is simply one of law. *Leelanau County Sheriff v Kiessel*, 297 Mich App 285, 289; 824 NW2d 576 (2012). However, here the issue is one of fact. "The determination of the existence of a conflict of interest that disqualifies counsel is a *factual question* that we review for clear error." *Avink v SMG*, 282 Mich App 110, 116; 761 NW2d 826 (2009) (footnotes omitted). The trial court's cursory order denying plaintiff's motion to disqualify corporate counsel stated simply:

This matter having come before the Court upon Plaintiffs Motion to Disqualify McDonald Hopkins as Corporate Counsel, the Court having held oral argument and being otherwise apprised therein:

IT IS HEREBY ORDERED that Plaintiffs Motion to Disqualify McDonald Hopkins as Corporate Counsel is denied.

Absent the transcripts, we are unable to discern the trial court's reasoning and, therefore, we decline to address this issue.

## V. JUDICIAL BIAS

During a September 12, 2014 pre-trial status conference, plaintiff indicated that he intended to proceed with his statutory claim for removal. The trial court responded that removal "wasn't going to happen." The trial court then threatened that it would "throw out" plaintiff's case in its entirety. Plaintiff argues that such statements show bias under MCR 2.003(C)(1)(a) and (b).[2] We disagree.

"We review a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo." *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* (internal quotation marks omitted).

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). However "[a] trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Mitchell*, 296 Mich App at 523; see also *Cain v Dep't of Corrections,* 451 Mich 470, 497; 548 NW2d 210 (1996). Grounds for disqualification are provided in MCR 2.003(C), which provides:

(1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

(a) The judge is biased or prejudiced for or against a party or attorney.

(b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

---

[2] Our review is not hampered by plaintiff's failure to provide relevant transcripts where the trial court provided a detailed written opinion and order, which fully detailed its decision.

Under MCR 2.003(C)(1)(a), a judge must be disqualified from hearing a case in which he cannot act impartially or is biased against a party. "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001), quoting *Cain v Dep't of Corrections*, 451 Mich 470, 503; 548 NW2d 210 (1996). In fact, "a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *In re MKK*, 286 Mich App 546, 567; 781 NW2d 132 (2009), lv den 486 Mich 909 (2010). Under MCR 2.003(C)(1)(b), the test for determining whether there is an appearance of impropriety is "whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *People v Aceval*, 486 Mich 887, 888-889; 781 NW2d 779 (2010), quoting *Caperton*, 129 S Ct at 2255.

Plaintiff has failed to meet his heavy burden of demonstrating that Judge Alexander was biased. Judge Alexander's statement that he would not consider removing the individual defendants as officers is in keeping with Serlin's report that removal was not in the corporation's best interests. Additionally, Judge Alexander's comment that plaintiff's entire case might be dismissed was also based on Serlin's report, which concluded that the vast majority of plaintiff's claims were unfounded. In fact, Judge Alexander warned all parties at various times that they should seek settlement because no one would be happy with the outcome. The judge nevertheless conducted the extensive jury trial in a temperate and fair manner.

## VI. COMPLETE AND ACCURATE JUDGMENT

Plaintiff argues that the trial court's judgment was incomplete and failed to show that plaintiff prevailed on Counts I and II (breach of fiduciary duty) of his complaint. We disagree.

MCR 2.602(B)(2) provides that a "court shall sign [a] judgment or order when its form is approved by all the parties and if, in the court's determination, it comports with the court's decision." "The proper interpretation and application of a court rule is a question of law, which we review de novo." *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

The jury verdict form posed the question: "Was the lease of the M Annex between Bates Group, LLC and Maxitrol Company fair to Maxitrol at the time of the transaction in 2010?" The jury answered "No." The second question asked: "Did Maxitrol incur any damage as a result of the M Annex Lease between Bates Group, LLC and Maxitrol Company?" The jury answered "Yes." Finally, the jury was asked: "What is the amount of damages that Maxitrol Company has incurred as a result of [the] Lease between Bates Group, LLC and Maxitrol Company?" The jury answered "$51,015."

Defendants' proposed judgment provided:

This matter having been tried before a jury, and the jury having returned a verdict in this matter in favor of Maxitrol Company and against Defendants

-10-

Bonnie Kern Koskela and Larry Koskela in the amount of $51,015.00 for overpayment of rent;

IT IS HEREBY ORDERED that a judgment of $51,015.00 is hereby entered in favor of Maxitrol Company and against Defendants Bonnie Kern-Koskela and Larry Koskela.

Plaintiff objected to the proposed order, arguing that it failed to reflect the counts upon which plaintiff prevailed. Plaintiff looked to the trial court's previous summary disposition order, which provided that the only surviving claims were plaintiff's breach of fiduciary claims (Counts I and II). In that order, the trial court noted:

For all of the foregoing reasons, the Court finds that Mr. Serlin's determination was made "in good faith after conducting a reasonable investigation." As a result, under MCL 450.1495, the Court DISMISSES with prejudice Plaintiff's Third Amended Complaint against Defendants Mertik Maxitrol and Kelly.

The Court also DISMISSES Plaintiff's Third Amended Complaint as to Defendants Bonnie Kern-Koskela, Larry Koskela, and Maxitrol Company - with the exception of Plaintiff's claim "*related to the M Annex, and the Annex Lease*, entered into by and between Bates Group, LLC and Defendant Maxitrol Company*" - which may proceed to trial. [Emphasis added.]

The trial court rejected plaintiff's proposed order and ultimately entered an order to reflect that the jury determined the M-Annex lease to be unfair:

This matter having been tried before a jury, and the jury having determined that the lease between Maxitrol Company and Bates Group LLC was unfair to Maxitrol Company and that the Maxitrol Company suffered damages in the amount of $51,015.00 for overpayment of rent;

IT IS HEREBY ORDERED that a judgment of $51,015.00 is hereby entered in favor of Maxitrol Company and against Defendants Bonnie Kern-Koskela and Larry Koskela.

A review of the record makes it clear that the jury was asked to decide the very narrow issue of whether the lease was fair to Maxitrol under MCL 450.1545a, which provides, in relevant part:

(1) A transaction in which a director or officer is determined to have an interest shall not, because of the interest, be enjoined, set aside, or give rise to an award of damages or other sanctions, in a proceeding by a shareholder or by or in the right of the corporation, if the person interested in the transaction establishes any of the following:

(a) The transaction was fair to the corporation at the time entered into.

(b) The material facts of the transaction and the director's or officer's interest were disclosed or known to the board, a committee of the board, or the independent director or directors, and the board, committee, or independent director or directors authorized, approved, or ratified the transaction.

(c) The material facts of the transaction and the director's or officer's interest were disclosed or known to the shareholders entitled to vote and they authorized, approved, or ratified the transaction.

(2) For purposes of subsection (1)(b), a transaction is authorized, approved, or ratified if it received the affirmative vote of the majority of the directors on the board or the committee who had no interest in the transaction, though less than a quorum, or all independent directors who had no interest in the transaction. The presence of, or a vote cast by, a director with an interest in the transaction does not affect the validity of the action taken under subsection (1)(b).

Notably absent from the statute is any language regarding fiduciary duty. Despite how plaintiff couches the issue, the very narrow question presented to the jury was whether the M-Annex lease was fair to Maxitrol. The jury determined that it was not and that Maxitrol suffered damages of approximately $51,000. The judgment was a fair representation of the jury's verdict and comported with the trial court's previous rulings.

## VII. AMENDING THE JUDGMENT

Plaintiff argues that the trial court erred in denying plaintiff's motion to amend the judgment to provide for additional equitable relief. We disagree.

An appellate court reviews a trial court's ruling on a motion to amend a judgment for an abuse of discretion. *Ligon v City of Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). To the extent these issues involve matters of statutory interpretation, such a question of law is reviewed de novo. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604-605; 886 NW2d 135 (2016).

Again, MCL 450.1545a(1)(a) provides:

A transaction in which a director or officer is determined to have an interest shall not, because of the interest, be enjoined, set aside, or give rise to an award of damages or other sanctions, in a proceeding by a shareholder or by or in the right of the corporation, if the person interested in the transaction establishes any of the following:

(a) The transaction was fair to the corporation at the time entered into.

Plaintiff reads the statute as one that prohibits "self-dealing." In so doing, plaintiff seeks to re-write the statute to provide substantive relief when, in fact, the statute provides neither a substantive cause of action nor a remedy. Our Supreme Court has admonished:

When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to ascertain and give effect to the intent of the Legislature. We begin this analysis by examining the language of the statute itself, as this is the most reliable evidence of that intent. If the language of a statute is clear and unambiguous, we presume that the Legislature intended the meaning clearly expressed. Accordingly, the statute must be enforced as written and no further judicial construction is permitted. [*Gardner v Dep't of Treasury*, 498 Mich 1, 5-6; 869 NW2d 199 (2015) (internal footnotes omitted).]

The plain language of MCL 450.1545a makes no reference at all to "self-dealing." It does not set forth the elements of a cause of action nor does it list specific remedies. Instead, the plain language of the statute provides that the mere fact that a transaction involves an officer of a corporation does not mean that the transaction should be enjoined, set aside, or give rise to an award of damages or other sanctions if it is shown that the transaction was fair to the corporation at the time. The statute's focus in on whether a transaction is fair to the corporation, not the behavior of individual corporate officers.

Here, the jury was not asked to judge the corporate officers' actions but the jury did determine that the transaction was *not* fair to Maxitrol. In light of that finding, plaintiff sought to rescind the lease agreement entirely. However, plaintiff alternatively argued that "[a]s an alternative to rescission, the Court could reform the lease consistent with the terms as testified to by Plaintiff's real estate expert Mr. Milia." At the hearing on the motion to amend, the trial court cited *Thomas v Satfield Co*, 363 Mich 111, 123; 108 NW2d 907 (1961) and found that it was within the court's power to reform the lease: "The Court is going to avail itself of that opportunity and reform the lease . . .in conformance with the jury verdict." *Thomas* involved a similar situation as the case at bar where two closely held corporations conducted business with one another. After it was determined that the lease terms were not fair to one of the corporations the trial court in that case reformed the lease. This Court affirmed, noting that "[o]n all the facts, it appears that the reformed lease reaches the result which all parties contemplated as being fair prior to its execution." *Thomas*, 363 Mich at 123. In reforming the lease in this case, the trial court referenced its equitable powers under *Thomas* and made no reference to MCL 450.1545a.

The jury had clearly rejected Milia's opinion that the fair market value of the rental was $5.60/square foot. Therefore, trial court properly reformed the lease, not on the basis of Milia's testimony, but to reflect the jury's verdict and provide a result that was fair to Maxitrol. Plaintiff, having requested reformation, should not be heard to complain about receiving what he asked for. A party may not claim error "premised on an error to which he contributed by plan or negligence." *People v Bosca*, 310 Mich App 1, 29; 871 NW2d 307, app held in abeyance 872 NW2d 492 (Mich 2015).

## VIII.  ATTORNEY FEES

Both plaintiff and the individual defendants believe they are entitled to attorney fees. We disagree.

An appellate court reviews a trial court's decision on attorney fees and costs for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of

discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* at 526.

As to plaintiff's claim for attorney fees, the individual defendants aptly note that plaintiff did not seek attorney fees under the section of the act that enables the court to award costs and attorney fees in a derivative action. MCL 450.1497(b) provides:

> On termination of the derivative proceeding, the court *may* order 1 of the following:
>
> ***
>
> (b) The corporation to pay the plaintiff's reasonable expenses, including reasonable attorney fees, incurred in the proceeding if it finds that the proceeding has *resulted in a substantial benefit* to the corporation. The court shall direct the plaintiff to account to the corporation for any proceeds received by the plaintiff in excess of expenses awarded by the court, except that this shall not apply to a judgment rendered for the benefit of an injured shareholder only and limited to a recovery of the loss or damage sustained by him or her. [Emphasis added.]

Although cited in his verified bill of taxable costs, plaintiff did not cite or argue that MCL 450.1497(b) was applicable in his motion to amend the judgment. Nor does he mention the statute on appeal except in a footnote to his reply brief. In any event, plaintiff is not entitled to attorney fees and costs under MCL 450.1497. The statute specifically states that a court "may" order a corporation to pay the plaintiff's reasonable expenses and fees if it finds that the derivative action resulted in a substantial benefit to the corporation. "[T]he term 'may' is relevantly defined as being 'used to express opportunity or permission' . . . In general, our courts have said that the term 'may' is 'permissive,' as opposed to the term 'shall,' which is considered 'mandatory' . . ." *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008). The trial court, therefore, had the discretion to award fees and declined to do so, having concluded that the jury's verdict provided only "de minimis damages" and, therefore, was not a substantial benefit to Maxitrol. Additionally, the trial court seemed to conclude that the $51,000 verdict reflected that plaintiff's expenditure of over a million dollars was not "reasonable" under the statute.

Instead of addressing MCL 450.1497, plaintiff cites MCL 450.1562 and MCL 450.1564b(4) for an award of attorney fees. MCL 450.1562 provides:

> A corporation has the power to indemnify a person who was or is a party or is threatened to be made a party to a threatened, pending, or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he or she is or was a director, officer, employee, or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, partner, trustee, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust, or other enterprise, whether for profit or not, against expenses, including attorneys' fees, and amounts paid in settlement actually and reasonably incurred by the person in connection with the action or suit, *if the person acted in good faith and in a manner the person reasonably*

*believed to be in or not opposed to the best interests of the corporation* or its shareholders. Indemnification shall not be made for a claim, issue, or matter in which the person has been found liable to the corporation except to the extent authorized in [MCL 450.564c]. [MCL 450.1562 (emphasis added).]

There is a dearth of case law interpreting § 1562. In one unpublished case, *Hampton Block Co v Hampton*, unpublished opinion per curiam of the Court of Appeals, entered October 27, 2000 (Docket No. 211468), the plaintiff argued that the trial court abused its discretion in failing to award him attorney fees in his suit against his brother, a fellow officer in the company. This Court considered MCL 450.1562, along with MCL 450.1563, which provides:

> To the extent that a director or officer of a corporation has been successful on the merits or otherwise in defense of an action, suit, or proceeding referred to in section 561 or 562, or in defense of a claim, issue, or matter in the action, suit, or proceeding, the corporation shall indemnify him or her against actual and reasonable expenses, including attorneys' fees, incurred by him or her in connection with the action, suit, or proceeding and an action, suit, or proceeding brought to enforce the mandatory indemnification provided in this section.

The Court concluded:

> Under the plain language of those statutes, [the plaintiff] is not entitled to attorney fees. The statutes indicate that directors and officers are protected in *defending* themselves against claims by a shareholder and do not compensate plaintiffs who bring suit against officers and directors of a corporation. MCL 450.1563; MSA 21.200(563) clearly states that indemnification applies when an officer or director is successful "in *defense* of an action" (emphasis added). Consequently, there is no support under either statute for [the plaintiff's] contention that he is entitled to attorney fees in connection with the suit that he brought against [his brother]. [*Hampton*, slip op, p 3.]

Although unpublished opinions are not binding precedent, MCR 7.215(C)(1), an unpublished opinion may be persuasive or instructive. *In re Kanija*, 308 Mich App 660, 668 n 6; 866 NW2d 862 (2014). Along with the fact that these statutes seem to logically flow to indemnification of corporate officers made defendants in actions, plaintiff had the obstacle of showing that he acted in good faith and in a manner the person reasonably believed to be in Maxitrol's best interests. Again, such language imbues in the trial court a fair amount of discretion. Plaintiff filed a multi-count complaint alleging a variety of claims against the individual defendants. Most of these claims were deemed without merit in Serlin's report. The trial court may have considered the fact that plaintiff, even if he acted in good faith, did not act reasonably, again as demonstrated by the relatively de minimus award in light of the heavy expenditure.

Next, MCL 450.1564b(4) provides: "A provision in the articles of incorporation or bylaws, a resolution of the board or shareholders, or an agreement making indemnification mandatory shall also make the advancement of expenses mandatory unless the provision, resolution, or agreement specifically provides otherwise." Article XI, § 11.02 of Maxitrol's by-laws somewhat mirrors MCL 450.1562 and provides:

11.02 Derivative Actions. Subject to all of the provisions of this Article XI, the corporation shall indemnify any person who was or is a party to or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director or officer of the corporation, or, while serving as a director or officer of the corporation, is or was serving at the request of the corporation as a director, officer, partner, trustee, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust or other enterprises, whether for profit or not, against expenses (including attorneys' fees) and amounts paid in settlement actually and reasonably incurred by the person in connection with such action or suit *if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation or its shareholders*. However, indemnification shall not be made for any claim, issue, or matter in which such person has been found liable to the corporation unless and only to the extent that the court in which such action or suit was brought has determined upon application that, despite the adjudication of liability but in view of all circumstances of the case, such person is fairly and reasonably entitled to indemnification for the reasonable expenses incurred. [Emphasis added.]

However, Article XI, § 11.05 further provides:

11.05 Contract Right: Limitation on Indemnity. The right to indemnification conferred in this Article XI shall be a contract right, and shall apply to services of a director or officer as an employee or agent of the corporation as well as in such person's capacity as a director or officer. Except as provided in Section 11.03 of these Bylaws, the corporation shall have no obligations under this Article XI to indemnify any person in connection with any proceeding, or part thereof, initiated by such person without authorization by the Board of Directors.

Therefore, there is no clear obligation to indemnify plaintiff under Maxitrol's by-laws. Article XI, § 11.02 requires that the director act in good faith and in a manner reasonably believed to be in Maxitrol's best interest. Article XI, § 11.05 requires that a director is not entitled to indemnification if a proceeding is initiated without the authorization of the board of directors.

Just as plaintiff was not, as a matter of law, entitled to attorney fees, nor were the individual defendants or Maxitrol under MCL 450.1497. MCL 450.1497(a) provides:

On termination of the derivative proceeding, the court may order 1 of the following:

(a) The plaintiff to pay any of the defendant's reasonable expenses, including reasonable attorney fees, incurred in defending the proceeding *if* it finds that the proceeding was commenced or maintained *in bad faith or without reasonable cause*. [Emphasis added.]

Again, "may" indicates that the trial court has discretion in ordering attorney fees. Here, the trial court *may* order costs *if* it determines that the action was commenced or maintained in bad faith or without reasonable cause. The trial court's comments clearly indicate that it questioned the reasonableness of plaintiff's action. Both the trial court and Serlin noted that Maxitrol was a profitable company that was properly managed. Still, the trial court was within its right to determine that plaintiff did not act in bad faith or without reasonable cause, especially in light of the fact that plaintiff prevailed on the issue of the fairness of the M-Annex lease. In light of the jury's verdict in Maxitrol's favor, it makes sense that the trial court would decline to award the individual defendants their attorney fees. In addition, Maxitrol has another problem. The statute clearly provides that a trial court may order the payment of *defendant's* reasonable expenses. True, Maxitrol was a nominal defendant in the technical sense, but it really stood in plaintiff's shoes in this shareholder derivative action. The jury's $51,000 verdict flowed directly to Maxitrol. Therefore, at least under these particular circumstances, the statute does not appear to apply to Maxitrol.

## IX. TAXABLE COSTS

Finally, each party claims that the trial court erred in failing to award taxable costs. We disagree.

An appellate court reviews a trial court's decision on attorney fees and costs for an abuse of discretion. *Smith*, 481 Mich at 526.

MCR 2.625 provides, in relevant part:

(A) Right to Costs.

(1) *In General.* Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.

(2) *Frivolous Claims and Defenses.* In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591.

(B) Rules for Determining Prevailing Party.

***

(2) *Actions With Several Issues or Counts.* In an action involving several issues or counts that state different causes of action or different defenses, the party prevailing on each issue or count may be allowed costs for that issue or count. If there is a single cause of action alleged, the party who prevails on the entire record is deemed the prevailing party.

Additionally, MCL 600.2591 provides:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(iii) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

Plaintiff is not entitled to costs. His claim for costs is based on his assertion that he prevailed in full on Counts I and II of his third amended complaint. Plaintiff did not come close to prevailing on each of the allegations couched within Counts I and II of his third amended complaint. In fact, following Serlin's report, many of these allegations were dismissed. However, neither were the individual defendants entitled to taxable costs. Most telling is the verdict against them in the amount of $51,000.

The trial court is entitled to discretion in awarding taxable costs. The court rule indicates that a prevailing party is entitled to costs, "*unless* . . . the court directs otherwise, for reasons stated in writing." Here, the trial court observed:

> This case has a long, torturous and pretty well-known history to the Court in parts. Mr. Kern has filed not less than three lawsuits seeking relief because he claims that he was--has been--because he claims that the directors, being his sister and brother-in-law, have entered into a willfully unfair and oppressive conduct and thus other damages.

> Plaintiffs filed a multi-count complaint. As a result of that, the Court appointed a disinterested director. This disinterested director came in and as a result of his report, in his long and--and completely thorough investigation, the Court dismissed all of the counts in the complaint, save the count regarding the— the lease between, basically the sister, Ms. Kern-Koskela and her husband and the company for a piece of land in Southfield.

The case was tried to a jury. The jury came back and found the lease was unfair and awarded, really based on the type of case this was, de minimis damages in the amount of $50,000--$51,015. As a result, since the Court has--since the jury has found the lease unfair, the Court is, pursuant to MCL 450.1545a(1), the Court has pretty large powers to reform the lease.

Under the Court's equitable powers, once the lease was determined to be unfair, the Court--Court is within its power to reform the lease, Thomas v Satfield, 363 Michigan 111. The Court is going to avail itself of that opportunity and reform the lease . . .in conformance with the jury verdict and will rule that the lease, for year six through ten, the lease rates are year six, $10.79 per square foot triple net; year seven, $11.29 per square foot triple net; year eight, $11.79 per square foot triple net; year nine, $12.29 per square foot triple net and year ten, $12.79 per square foot triple net.

Next, the Court has to deal with the award for attorney fees--of attorney fees. The individual defendants, the corporation and the plaintiff has—have all sought reim--reimbursement for their attorney fees; however, in this case, neither party prevailed in full. Therefore, the Court will deny all requests for attorney fees and the individuals and the corporation will remain personally liable for their attorney's fees.

The Court has also found that the actions of the defendant directors, although they may have been unfair, did not rise to the level of willfully unfair and oppressive conduct, far from it. While these bro—this brother and sister may still be upset about the fact that somebody got a nicer bike than the other one got 20 or 30 or 40 or 50 years ago, they don't get along. Okay.

The business is successful. The business is running profitably. Everybody is making money on this deal. There is no willful and oppressive conduct. They don't like each other, but since the Court has found that there is no willful and oppressive conduct, the Court does not have authority or jurisdiction to do anything about corporate governance and therefore, the motion to amend the judgment and for equitable relief, is denied.

The trial court's statement indicates that no party truly prevailed in this action. It properly exercised its discretion in denying taxable costs to plaintiff and the individual defendants.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray